LAW OFFICE OF
## JESSE M. SIEGEL
The Woolworth Building

(Tel) 212-207-9009                    233 Broadway, Suite 707
(Fax) 212-732-1339                    New York, New York 10279                    JesseMSiegel@aol.com

December 29, 2014

**BY ECF**

Hon. Robert P. Patterson, District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

**Rule 32 Sentencing Memorandum in the Matter of**
*United States v. Roberto Grant*, 14 Cr. 130 (RPP).

Dear Judge Patterson:

We write in connection with the sentencing of our client, Roberto Grant, scheduled for January 8, 2014, at 11:30 a.m.  We respectfully request the Court impose a non-guidelines sentence of a term of imprisonment of 120 months on Mr. Grant for his participation in a Hobbs Act robbery conspiracy.  Probation has recommended a 151-month term of imprisonment, at the bottom of his advisory sentencing guidelines range of 151 to 188 months.

Mr. Grant is an intelligent, personable and well-spoken 34 year-old young man who, unfortunately, has spent a significant portion of his life in prison as the result of his involvement in various robberies.  He is now, however, married and the father of twin 12 month-old girls, and step-father to his wife's two children by a prior relationship, 12 and 7 years-old, who he was helping to raise before being arrested here.  We submit that, while prior prison sentences have not deterred Mr. Grant from engaging in robberies, he is now at the point where he understands that he must stop if he is to have any role in raising his children, whom he misses dearly.

The sentence we request is an extremely long sentence which would constitute a significant punishment and reflect the seriousness of the offense.  In this regard, it should be noted that he will, on the date of sentencing, have spent almost one year on Riker's Island and at MCC Manhattan, under conditions harsher than those at prisons designed to house sentenced prisoners.  A 10-year sentence would also deter him and others from engaging in similar conduct in the future.  If imposed, he would be in his 40s when released from prison, at an age when he is

Hon. Robert P. Patterson
December 29, 2014
Page 2

less likely to recidivate.

In consideration of all these circumstances, we submit a term of imprisonment of ten years would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in Title 18, United States Code, section 3553.

## **Personal Background**

Roberto Grant, Jr., 34 years-old, was born on March 28, 1980, in Brooklyn, to Crecita Cross, now 54 years-old and Roberto Grant, Sr., who is deceased.  Mr. Grant's parents separated when he was an infant.  Ms. Cross lives in Brooklyn and works as a home attendant.  After separating from Ms. Cross, Grant, Sr., returned to his native Panama, where he served in the military until he was killed in the American invasion of 1989.  Mr. Grant has one full sibling, three paternal half-siblings, and four-maternal half-siblings, all of whom live in the United States.  (Presentence Report ("PSR") ¶¶110-12.)

Mr. Grant enjoyed a happy and secure childhood until his father was killed in the line of duty during the American invasion of Panama.  He lived with his father, step-mother, and step-sisters in Panama, in a large home equipped with electricity and indoor plumbing in the countryside.  He received a formal education and enjoyed a comfortable and stable existence. He maintained contact with his mother, who visited him in Panama periodically, and whom he visited in Brooklyn.  (PSR ¶113.)

All this changed for the worse when Mr. Grant was nine years-old.  While visiting his mother in Brooklyn, he learned that his father had been killed during the American invasion.  He remained with her and never returned to Panama.  (PSR ¶114.)

As the owner of a beauty salon, Ms. Cross provided Mr. Grant and his maternal step-brothers with what he described as a "middle-class lifestyle."  (PSR ¶114.)   Nonetheless, he was a fish out of water, whose happy life in Panama had been stolen from him, and he quickly succumbed to the negative influences of his new surroundings, in what he called a "downward spiral."  (*Id.*)  He dropped out of school after the 10th grade, and began smoking marijuana daily at the age of 17, at which age he sustained his first criminal convictions, for petit larceny.  (PSR ¶¶95-97, 132.)  Mr. Grant quickly moved on to robberies.

He sustained three robbery convictions (accounting for nine criminal history points) for robberies he committed at the age of 18, for which he served concurrent prison terms of five years, 42 months and 42 months, respectively.   (PSR ¶¶99-101.)  After being released, he quickly committed, and was convicted for, another robbery, at the age of 23, for which he received a ten-year sentence.  (PSR ¶102.)  When released in 2012, at the age of 32, he had spent almost half his life in prison, for robberies committed at the ages of 18 and 23.

Hon. Robert P. Patterson
December 29, 2014
Page 3

While jailed at Riker's Island in 2004, during his last state case, Mr. Grant married Nicole Morrison, whom he had known since the age of 13.  Mrs. Grant, 33 years-old, is a high school graduate who is currently a motivational speaker and is studying to become a substance abuse counselor.  She has two children by other relationships, ages 7 and 12, who Mr. Grant was helping to raise before being arrested in this case.  Mr. and Mrs. Grant have twin, 12 month-old, baby girls.  The whole family was living in Hyattsville, MD, to be near Mr. Grant's sisters and allow him to make a "fresh start" at the time he became involved in this conspiracy and was arrested.  Mr. Grant worked fulltime for a company cleaning residential and office buildings, for which he was paid about $800 bi-weekly.  (PSR ¶¶116-18, 136.)

During her interview by Probation, Nicole Grant described her husband as "family-oriented, loyal and a good provider."  She believes he perpetrated this crime due to the loss of his job and the financial constraints under which they survived.  (PSR ¶119.)

Mr. Grant is healthy and, aside from having used marijuana heavily as a teen, does not have a significant substance abuse history or current drug problem.  (PSR ¶¶120-29.)

## The Offense

Mr. Grant was arrested by NYPD police officers on January 30, 2014.  He was produced in the United States District for the Southern District of New York on February 18, 2014, and charged with participating in a series of Hobbs Act robberies of jewelry stores in various states, including New York.

On August 28, 2014, Mr. Grant pled guilty, pursuant to an agreement with the government, to Count One of a superceding indictment charging him with conspiring to commit robberies of jewelry and watch stores that sell goods manufactured and shipped in interstate commerce, in violation of Title 18, United States Code, section 1951.

In their agreement, the parties stipulated that, due to his prior convictions for robbery, Mr. Grant is a career offender, pursuant to U.S.S.G. section 4B1.1.  The parties agreed his total offense level is 29, using a grouping analysis pursuant to U.S.S.G. section 3D1.4 (which yields the same result as the career offender statute), and his criminal history category is VI.  As a result, his advisory sentencing guidelines range is a term of imprisonment of 151 to 188 months. (PSR ¶15.)

## The Presentence Report

The sentencing guidelines calculation in the PSR comports with that in the parties' plea

Hon. Robert P. Patterson
December 29, 2014
Page 4

agreement. .  (PSR ¶¶15, 47-92, 103-105, 142.)

Probation recommends the Court impose a 151-month term of imprisonment, at the bottom of Mr. Grant's advisory sentencing range, and a three-year term of supervised release, the maximum permitted.  (PSR at 27-28.)


## Letters of Support

Attached hereto as **Exhibit A** are letters from Mr. Grant's wife and friends, which we ask the Court to consider when imposing sentence.


## Sentencing Under Section 3553

The Court is required to impose a sentence that is "sufficient, *but not greater than necessary*" to achieve the purposes of sentencing set forth in Title 18, United States Code, section 3553(a)(2).  18 U.S.C. § 3553(a) (emphasis added).  The Second Circuit has underlined this requirement: "Plainly, if a district court were to explicitly conclude that two sentences equally served the statutory purpose of §3553(a), it could not, consistent with the parsimony clause, impose the higher."  *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).  Thus, a sentencing court is to impose the *shortest sentence* that achieves the purposes of sentencing.

In determining a sentence, the Court shall consider the factors set forth in section 3553(a), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C)  to protect the public from further crimes of the defendant; and

Hon. Robert P. Patterson
December 29, 2014
Page 5

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The Second Circuit has emphasized, "Although the sentencing judge is obliged to consider all of the sentencing factors outlined in Section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances.  That is the historic role of sentencing judges, and it may continue to be exercised."  *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

We respectfully submit a ten-year, or 120-month, term of imprisonment is a very substantial sentence which would constitute a significant punishment for the crime Mr. Grant committed.  It would reflect the seriousness of the offense, and surely deter him and others from engaging in similar conduct in the future.  At the same time, a ten-year sentence would give Mr. Grant hope that he will be released in time for his infant children to know him, and reason to believe he may be able to salvage his marriage and play a meaningful role in the lives of his family members, goals to which he is dedicated. Because no good purpose would be served by sentencing Mr. Grant to more, a prison sentence of 120 months would be "sufficient, but not greater than necessary" to accomplish the various purposes of sentencing, and appropriate given the various factors a court is to consider in imposing sentence.

The history and characteristics of the defendant.

We do not suggest in any way that Mr. Grant's personal history excuses the criminal conduct in which he has engaged.  He does not dispute, and completely accepts responsibility for, the bad decisions he has made.

Nonetheless, as his attorneys, we cannot help but note the tragedy in his situation.  Had the United States not invaded in 1989, there is every reason to believe he would have remained in Panama.  He was 9 years-old at the time his father was killed, and being raised in a happy, financially-secure nuclear family that included his father, step-mother and step-sisters.  There were no plans for him to move to Brooklyn, to be with his mother; he was merely visiting her when he learned his father had been killed.  If not for the rupture in his life caused by the invasion and his father's death, he might have followed in his father's footsteps.  Personable, intelligent and well-spoken, he might today be a career military officer in Panama, rather than a young man facing yet another extremely long prison sentence in the United States.

While this tragic history does not excuse his crimes, it clearly is the reason Mr. Grant was in the position to make the bad decisions he did, and it does not take a psychiatrist to wonder whether it might have contributed to the antisocial nature of those decisions.

Hon. Robert P. Patterson
December 29, 2014
Page 6

Another relevant aspect of Mr. Grant's personal history is that he started down this bad road at an extremely young age. He is a career offender, and faces extremely high sentencing guidelines, partly as the result of bad decisions he made to commit robberies when he was 18 and 23. Such a young person does not have the maturity and life experience of an older person, and cannot be expected to exhibit the judgment of an older person. *See, Gall v. United States*, 552 U.S. 38, 57-58 (2007); *Johnson v. Texas*, 509 US 350, 367 (1993); U.S.S.G. section 5H1.1. While he was, of course, older at the time he committed the instant offense, a pattern had been established, and he reverted to criminality when faced with the economic stresses of raising a young family with extremely limited means.

The detailed and informative letters written by his wife and friends (attached hereto as **Exhibit A**) show that Mr. Grant's character is not defined solely by his criminal activities. Shayla Simpson, Program Coordinator for the Queens Library Youth Literacy Program, says he is "extremely dedicated to his family and the youth at risk," and describes how he has "help[ed] with the youth within the community by organizing and coaching sporting events throughout the year specifically for Key to Life Academy Organization." Fredericka Evans, a Business Associate at Montefiore Hospital, who is engaged to Mr. Grant's sister, also describes his interactions with children and dedication to his family, and says he "wants only the best for his own kids as well as his siblings, he is indeed a big brother they look up to him as do the kids." And Nicole Morrison-Grant, his wife, describes how devoted Mr. Grant is to his children, after having lost his own father at the age of 9. She writes, "He is an excellent father the kids looked forward to coming home for daddy to help them with their homework. Where I lacked in the house hold he picked up, he played with the kids went to school functions helped with school projects and always made [sure] they were happy even if it was just a trip to the library. He was a firm believer in family night, where we would all get together and watch a movie of the kid's choice order pizza pop popcorn and see who would go to sleep first; I always lost."

In short, those who know Mr. Grant describe a loving, caring and generous individual concerned with the well-being of others. Unfortunately, no matter what sentence the Court imposes, he will be separated from his family and friends for a very long time.

The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.

We submit that ten years in prison is an extremely long sentence, one that would reflect the seriousness of the offense, constitute just punishment, and provide general and specific deterrence.

The government may argue that Mr. Grant has already served a 10-year sentence, which did not deter him from committing the instant offense. However, we suggest his family

Hon. Robert P. Patterson
December 29, 2014
Page 7

circumstances are different now, and make it far more likely that a 10-year sentence will have the desired deterrent effect this time. His desire to return to his family and play a meaningful role in the lives of his children and step-children is paramount to him and provides him with an incentive he did not have before. He is 34 years-old; he will be about 42 if the Court imposes the sentence requested, an age at which he is less likely to recidivate. He will have spent more than half his life in prison. His infant twins will be almost 10 years-old by that time; his step-children will be about 15 and 20. He understands that if he gets out of prison at 42 and gets caught committing another crime, they will all be adults by the time he is released again — if he is released again.

In considering the question of just punishment, it should also be recognized that Mr. Grant will, on the day of sentence, have spent almost one year in pretrial detention at Riker's Island and MCC Manhattan, both facilities not "designed for long term stays." *See United States v. Behr*, 2006 WL 1586563 *5 (S.D.N.Y. 2006) (Sweet, J.) (further noting that harsh conditions at MCC were recognized by Judge Kimba Wood as a basis for a substantial sentence reduction). Inmates' movements are severely restricted at all times. They have little opportunity to participate in social programs, very limited access to personal development programs, exercise, physical training, or recreation, and almost no chances to be outdoors.

The Supreme Court has recognized that because pre-trial confinement is an administrative, as opposed to judicial, form of detention, the conditions of confinement may not rise to the level of punishment. *Bell v. Wolfish,* 441 U.S. 520, 537-38 (1979). But, as Judge Weinstein of the Eastern District observed, "The inevitable consequences of pretrial incarceration, particularly when prolonged beyond a short period, are undeniably severe." *United States v. Gallo,* 653 F.Supp. 320, 336 (E.D.N.Y.1986).

Even pre-*Booker*, the Second Circuit held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," *United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (*per curiam*), because harsh conditions of confinement could be regarded as a mitigating factor pursuant to U.S.S.G. §5K2.0. *Id.* (internal citation omitted.) Similarly, sentencing judges in this district have based downward departures on findings of unduly harsh conditions of pre-trial confinement. *See, e.g., United States v. Francis*, 129 F.2d 612 (S.D.N.Y. 2001) (Patterson, J.) (Departing one level because of harsh conditions of pre-trial confinement endured by illegal reentry defendant for 13 months at Hudson County Correctional Center). Post-*Booker*, concerns that authorized departures from the sentencing guidelines when they were considered mandatory may now justify non-guidelines sentences pursuant to Title 18, United States Code, section 3553(a).

Hon. Robert P. Patterson
December 29, 2014
Page 8

### Conclusion

For the foregoing reasons, we respectfully request the Court sentence Roberto Grant to a term of imprisonment of ten years.

Very truly yours,


/s/
Jesse M. Siegel


cc. A.U.S.A. Richard Cooper
    (By email: Richard.Cooper@usdoj.gov)
    A.U.S.A. Andrea Griswold
    (By email: Andrea.Griswold@usdoj.gov)